OPINION
{¶ 1} Defendant, Billy J. Carruth, appeals from his convictions and sentence for aggravated robbery, aggravated burglary, and kidnapping.
{¶ 2} On October 13, 2002, at about 9:30 p.m., two men forced their way at gunpoint into the home of Tora Blackshear at 374 Kenwood Avenue, in Dayton. Once inside, they threatened Ms. Blackshear, her son Dominique, and her brother, Toby Moore, and demanded money.
{¶ 3} Ms. Blackshear was speaking with her mother by phone when the men entered, and she told her mother to call the police. Before police arrived the men threatened to kill Ms. Blackshear and they took money that she was holding to pay bills from her purse. They also took several tires, a camcorder, and a gun belonging to Ms. Blackshear when they left the house.
{¶ 4} Toby Moore recognized one of the two robbers as Shannon Smyth. The other man was not known by the victims. When police arrived, Smyth sped away in a police cruiser he managed to start. The other man ran off, after first dropping his gun.
{¶ 5} Police gave chase on foot and other officers sealed off the area. A tracking dog was brought to the scene. The dog led police to the porch of a nearby house, where they found the Defendant, Billy J. Carruth. He was sweating and had grass stains on his pants. He was wearing an orange shirt, unlike the robber who had run off, who wore a yellow shirt. The dog also led police to another nearby location, where the yellow shirt was found the following day. Wrapped inside was the camcorder taken from Ms. Blackshear's home.
{¶ 6} Officers put Defendant into a police cruiser and returned him to Ms. Blackshear's home. On the way there, Defendant asked the officers: "What if she can't identify me? What's going to happen?" Defendant had also asked to be put in a cruiser, explaining that "I don't want there to be any drama."
{¶ 7} Ms. Blackshear and Mr. Moore identified Defendant as one of the two robbers. A search of Defendant's person produced the money taken from Ms. Blackshear's purse, bundled as she had arranged to pay particular bills she owed. Defendant was arrested and transported to jail.
{¶ 8} The following day Mr. Moore appeared at a police station and was shown a single photograph depicting Defendant. He identified Defendant as one of the two men who committed the robbery.
{¶ 9} Defendant was indicted on one count of aggravated robbery, R.C. 2911.01(A)(1), one count of aggravated burglary, R.C. 2911.11(A)(2), and three counts of kidnapping, R.C.2905.01(A)(2). A firearm specification, R.C. 2941.145, was attached to all of the charges. Prior to trial Defendant filed a motion to suppress the identification testimony. Following a hearing the trial court overruled that motion.
{¶ 10} A jury trial commenced and Defendant was subsequently found guilty of all charges and specifications. The trial court sentenced Defendant to consecutive terms of imprisonment totaling sixteen years. Defendant has timely appealed to this court from his conviction and sentence.
 FIRST ASSIGNMENT OF ERROR
{¶ 11} "Appellant carruth was denied due process and a fair trial, as the identification process was unreliable, resulting in a substantial likelihood of misidentification and a tainted in-court identification of appellant."
{¶ 12} Prior to trial Defendant moved to suppress any identification testimony by Ms. Blackshear and Mr. Moore, pursuant to Crim.R. 12(C)(3), alleging that the procedures used to procure their identification of him were unduly suggestive. The trial court denied the motion.
{¶ 13} The due process clause of the Fifth and Fourteenth Amendments protects an accused against the prejudicial effects of unreliable identification testimony. Manson v. Braithwaite
(1977), 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140. Identification evidence based on or derived from pretrial identification procedures is subject to suppression when the procedure or procedures used were so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. Neil v. Biggers (1972), 409 U.S. 183,93 S.Ct. 375. An accused who moves to suppress bears the burden to show that under the totality of the circumstances the pretrial identification which was made was unreliable. Id.; State v.Gordon (Feb. 28, 2003), Montgomery App. No. 19231, 2003-Ohio-905.
{¶ 14} An identification which is the product of a suggestive procedure is nevertheless admissible if, considering the totality of the circumstances, it is reliable. Manson v. Braithwaite;State v. Jells (1990), 53 Ohio St.3d 22, 27, 559 N.E.2d 464;Martin, supra. In determining whether an identification is reliable, courts consider: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the witness' level of certainty when identifying the suspect at the time of the confrontation; and (5) the length of time elapsed between the crime and the identification. Biggers, supra.
{¶ 15} One-on-one identifications are inherently suggestive.State v. Martin (1988), 127 Ohio App.3d 272. That effect is even more pronounced where police tell the witness that the suspect the witness is shown is likely the person who committed the offense concerned.
{¶ 16} Evidence introduced at the suppression hearing shows that, before they asked Ms. Blackshear and Mr. Moore to view the Defendant on the night of the crime, the two victims were told that the purpose of the showing was to determine whether they could identify him as one of the two robbers. That is a neutral comment, explanatory of the procedure and no more suggestive than the procedure itself.
{¶ 17} However, two months after the court had overruled the motion to suppress, Mr. Moore testified at Defendant's trial that before they produced him for identification the officers said that Defendant had, in effect, "told on himself." Such a statement plainly asks the identifying witness to corroborate suspicions held by the police, requiring the witness to overcome them in order to deny a proposed identification. We strongly disapprove of the tactic. We also disapprove of showing the witness a single photograph of a suspect, as police did the following day when they showed Mr. Moore a photograph of Defendant. The procedure is unduly suggestive and should not be employed.
{¶ 18} Concerns about the effect of such suggestions on the reliability of identification evidence are enhanced as the identification and the facts and circumstances on which it is based become more attenuated or remote one from the other. They are less so when the identification occurs shortly after the event and the circumstances of the event provided the witness an ample opportunity to later make a clearly positive identification.
{¶ 19} Defendant argues that Mr. Moore's identification of him is made less reliable by Mr. Moore's admitted anger at the men who had invaded Ms. Blackshear's house. His testimony suggests that he might have attacked Defendant had police not been there to restrain him. We do not agree that Mr. Moore's natural anger undermines the reliability of his identification. If anything, it should have induced in him a purpose to avoid a misidentification in order to ensure that only the actual culprits would be caught and punished.
{¶ 20} Ms. Blackshear and Mr. Moore were in close contact with the perpetrators for approximately ten to fifteen minutes while the two men were inside the house. Neither robber wore a mask or otherwise attempted to conceal his face. Only a short interval of time, about five minutes, separated those events from the witness' subsequent identification of Defendant as one of the two robbers. Mr. Moore stated with respect to Defendant that he "can never forget his face."
{¶ 21} These events occurred while the witnesses were held at the point of a gun and subjected to death threats. It has been observed concerning hanging that its prospect concentrates the mind wonderfully. That comparison may seem unfeeling where made with respect to innocent victims such as these, but it makes the point that the cruelty of their plight could only have enhanced their memories, not diminished them.
{¶ 22} In their totality, these circumstances overcome any prejudice arising from the suggestiveness of the pretrial identification procedures employed. The trial court did not err when it overruled Defendant's motion to suppress.
{¶ 23} The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR
{¶ 24} "The trial court deprived appellant of a fair trial through overruling a challenge for cause with respect to a biased juror."
{¶ 25} During voir dire prospective juror Ratliff indicated his belief that testimony of police officers is entitled to more credibility than that of an ordinary citizen because officers are trained to be more observant. Ratliff also disclosed that for a period of about five years, from approximately 1991 or 1992 until 1996 or 1997, he had worked daily with Dayton police installing computer systems for them. Mr. Ratliff also stated that three cars he owned had been stolen from him and that only two had been recovered by police.
{¶ 26} Defendant challenged Mr. Ratliff for cause, arguing that his close association with law enforcement and his attitude that police officers deserve more credibility than other witnesses make him excessively biased. The trial court overruled Defendant's challenge for cause.
{¶ 27} When the trial court made Mr. Ratliff first alternate juror, Defendant used his final peremptory challenge to remove juror Ratliff. Defendant argues that because he was forced to exhaust all of his peremptory challenges, the trial court's erroneous ruling on his challenge for cause was prejudicial.State v. Williams, 79 Ohio St.3d 1, 1997-Ohio-407.
{¶ 28} A person called as a prospective juror may be challenged for cause if that person demonstrates bias toward the defendant. R.C. 2945.25; Crim.R. 24(B). A trial court's ruling on a challenge for cause will not be disturbed on appeal absent an abuse of discretion. State v. Schiebel (1990),55 Ohio St.3d 71. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the court. State v. Adams (1980),62 Ohio St.2d 151.
{¶ 29} Bias is a predisposition to decide a case or an issue in a certain way, which does not leave the mind perfectly open to conviction. Black's Law Dictionary (Fifth Ed.). Mr. Ratliff's observation concerning police officers was simply that their training better allows them to take note of and recall details, which is not seriously disputed. That does not necessarily mean that officers are more honest or truthful than other witnesses concerning what their perceptions revealed.
{¶ 30} A review of the record discloses that, when asked, Mr. Ratliff indicated that he would not have any difficulty laying aside his previous relationship with the police and weighing the testimony of the officers involved in this case on its own merits. Mr. Ratliff indicated that he would evaluate the credibility of any police officer should there be some reason to question what the officer said. Finally, Mr. Ratliff indicated that he could be fair and impartial in this case.
{¶ 31} The record does not support a finding that Mr. Ratliff was biased against Defendant. Neither does it reflect that Mr. Ratliff had previously formed an opinion as to Defendant's guilt or innocence. Instead, the record reflects that Mr. Ratliff was willing to be fair and impartial and to render a verdict according to the law and the evidence submitted to the jury at trial. Under those circumstances, the trial court would not have been justified in disqualifying and removing Mr. Ratliff for cause. Crim.R. 24(B)(9). No abuse of discretion has been demonstrated.
{¶ 32} The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR
{¶ 33} "Appellant was denied his constitutionally guaranteed rights to due process and to effective assistance of counsel."
{¶ 34} To demonstrate ineffective assistance of trial counsel a defendant must show that counsel's performance fell below an objective standard of reasonable representation and that the defendant was prejudiced by counsel's performance; that is, that a reasonable probability exists that but for counsel's unprofessional errors the result of Defendant's trial or proceeding would have been different. Strickland v. Washington
(1984), 466 U.S. 668; State v. Bradley (1989),42 Ohio St.3d 136.
{¶ 35} Defendant argues that his trial counsel performed deficiently by failing to properly prepare for the suppression hearing; specifically, that at the suppression hearing defense counsel did not employ the transcript of Defendant's preliminary hearing ordered by Defendant's former counsel. That transcript contained evidence, discussed previously, supportive of Defendant's contention that the show-up identification procedure employed by police was unduly suggestive. According to the preliminary hearing transcript, before police asked Mr. Moore to view Defendant while he sat handcuffed in the rear of a police cruiser they said that Defendant had "told on himself."
{¶ 36} What police had told Mr. Moore was certainly relevant to whether the pretrial identification procedure used was unduly suggestive. Indeed, it was probative of Defendant's proposition that the procedure was suggestive. However, and on the basis of the totality of the circumstances test from which impermissible suggestiveness is found, we cannot find prejudice on the standard that Strickland imposes.
{¶ 37} Defendant next points to several instances when his counsel failed to object to speculative testimony from the State's witnesses.
{¶ 38} Officer Saylors testified at the suppression hearing that he chased Defendant after he ran out of the victim's home, and that Defendant had on a yellow shirt at that time. Officer Saylors further stated that during the chase he lost sight of Defendant, but subsequently discovered him on a nearby porch with the aid of a tracking dog, and that Defendant was wearing an orange shirt. Officer Saylors said that the tracking dog also led police to a second porch two houses away, from which the next day police recovered a camcorder that had been stolen from the victim's home and that was wrapped up in a yellow shirt. This led Officer Saylors to speculate that Defendant had concealed that property on that second porch. (T. 28-29). Officer Saylors stated:
{¶ 39} "Apparently he either got rid of the evidence, then came back to run to find a better hiding place. This, I don't know. But the camera (camcorder) and him were separated by two houses." (T. 43).
{¶ 40} Evid.R. 701 permits a lay witness to testify in the form of opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or determination of a fact in issue. The officer's statement is such an opinion or inference. There was no basis to exclude it as speculative. Its reliability is subject to test on cross-examination.
{¶ 41} Defendant also complains about speculation in the testimony of several other witnesses. For instance, Dominique Blackshear testified:
{¶ 42} "Q. Okay. What do you remember next?
{¶ 43} "A. Shannon (Smyth) came upstairs. And I think the Carruth guy gave Shannon the gun, then Shannon came upstairs and put the gun to my mom's head." (T. 351).
{¶ 44} Toby Moore testified:
{¶ 45} "Q. What happened when they came downstairs?
{¶ 46} "A. He started asking, `Where the money? Where the money?' started getting frustrated. He started thinking devious things." (T 307).
{¶ 47} Tora Blackshear testified:
{¶ 48} "And I went to where my money at, but it wasn't there because my brother had already gave them the money I had." (T. 246).
{¶ 49} It was obvious that this portion of Dominique Blackshear's testimony was not based upon his personal knowledge, because he said that he only thought Shannon Smyth had been given the gun by Defendant. The jury likely would have understood that Dominique was speculating. More importantly, even assuming that counsel performed deficiently by failing to object to this speculation, Defendant has failed to demonstrate that he was prejudiced by it on the standard Strickland imposes.
{¶ 50} Toby Moore testified that Defendant was "thinking devious things," which is obvious speculation. Moore nevertheless gave a detailed account of Defendant's participation in this crime, including his use of a gun, and he identified Defendant both before and during trial as one of the perpetrators. Even assuming that counsel should have objected to Moore's speculation, Defendant has failed to demonstrate any prejudice resulting from counsel's failure to object.
{¶ 51} With respect to Tora Blackshear's speculation that her brother, Toby Moore, gave the robbers the money she had, that speculation was not prejudicial because Moore testified that he did, in fact, give the robbers Tora Blackshear's money.
{¶ 52} Defendant next asserts that his counsel performed deficiently by failing to object to leading questions posed by the prosecutor to Dominique Blackshear on direct. For example, the prosecutor asked: "Was he pointing anything at you?", "What was he pointing at you?", "Did he have anything in his hand?", "Who was he pointing the gun at?", "Were you scared?"
{¶ 53} A leading question is one that instructs the witness how to answer or puts words into his mouth to be echoed back. Black's Law Dictionary, (Fifth Edition). Leading questions may not be used on direct examination of a witness. Evid.R. 611(C).
{¶ 54} A question is not leading merely because it directs the witness to a point to which the witness is asked to respond, as these questions did. Further, any leading suggestion is avoided when the point is coupled with the interrogative pronouns what, who, where, why, or how, which require the witness to elect his or her own response. The particular questions that employed those words were therefore not leading. Whether the witness was "scared" while his mother was threatened with a gun invites a response so obvious as to lack any real prejudicial effect in relation to any matter genuinely in issue.
{¶ 55} Defendant further complains that his counsel failed to object to admissions of hearsay evidence. Officer Saylors testified that during his investigation he learned that a remote control device found on Defendant's person at the time of his arrest matched the stereo in a police vehicle later found on Grafton Avenue. That vehicle was used by Defendant's accomplice Smyth to flee when police arrived. The State presumably offered this evidence to connect Defendant to this crime scene.
{¶ 56} "Hearsay" is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). A "statement" is (1) an oral or written assertion or (2) non-verbal conduct intended to be an assertion. Evid.R. 801(A). The "declarant" is the person who makes the statement. Evid.R. 801(A).
{¶ 57} Officer Saylors' statement concerning the origin of the remote control device involved no recitation of a declaration made by any other person. It was therefore neither hearsay nor subject to objection as hearsay. The court had previously sustained an objection to Officer Saylors' testimony that another officer told him that information, which was hearsay. This response was Officer Saylors' own assertion. It was subject to test on cross-examination for credibility and/or basis of knowledge, but it was not objectionable hearsay.
{¶ 58} Finally, Defendant complains that his counsel failed to object to repetitive identification testimony.
{¶ 59} Identification of the perpetrator was the crucial issue in this case. The record does not demonstrate unnecessary repetition in the identification testimony. In establishing that Defendant was one of the perpetrators of this robbery, the State elicited his identification from various witnesses as the person who said and did certain things during these crimes. Defense counsel did not perform deficiently by failing to object to that identification testimony.
{¶ 60} Defendant has failed to demonstrate a reasonable probability that, but for his counsel's failure to object to the evidence about which he now complains the outcome of his trial would have been different. Ineffective assistance of counsel is therefore not demonstrated. Strickland
{¶ 61} The third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR
{¶ 62} "Appellant was deprived of a fair trial through the trial court's erroneous evidentiary rulings."
{¶ 63} Defendant claims that the trial court erred in admitting, over his objection, Officer Saylors' testimony about Defendant's alleged thoughts when Officer Saylors said that he decided to put Defendant in handcuffs after he found Defendant on a nearby porch because Defendant "was looking around like he was trying to find an escape route."
{¶ 64} The decision whether to admit or exclude evidence rests within the sound discretion of the trial court and its decision in such matters will not be reversed on appeal absent an abuse of discretion and material prejudice. State v. Apanovitch (1987),33 Ohio St.3d 19, 25. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the court. State v. Adams (1980), 62 Ohio St.2d 151.
{¶ 65} App.R. 16(A)(7) requires appellants to present an argument in support of any error contended. Appellant has failed to do that. The presumption of regularity that attaches to the trial court's rulings would then permit us to overrule the error assigned on that basis. We decline to do so, believing that the interests of justice are better served by deciding the alleged error.
{¶ 66} Officer Saylors testified about chasing a suspect who ran from Tora Blackshear's home when police arrived on the scene, and about how he lost that suspect and shortly thereafter located Defendant on the porch of a nearby house with the aid of a tracking dog. When Officer Saylors discovered Defendant he was sweating and had grass stains and dirt on his pants. Officer Saylors asked Defendant if he lived at that house, and Defendant gave three different responses. Defendant's statement that he was sweating and dirty because he had been working in the back yard was suspicious, given that it was dark and very late at night. Officer Saylors suspected that Defendant was the robbery suspect he had just been chasing. Thus, in explaining what actions he took next, Officer Saylors testified:
{¶ 67} "A. I stayed with Billy on the porch. And I told those guys to go on with the dog. And I took Carruth. He was getting a little squirrelly. He was looking around like he was trying to find an escape route. At this point, I said, `I better put you in `. . .
{¶ 68} "MR. ROHRKASTE: Objection, your Honor, as to what he might have been thinking.
{¶ 69} "THE COURT: Overruled.
{¶ 70} "A. BY THE WITNESS: I said, `I better put this guy in cuffs,' because the other officers had already left me and I was the only one on the porch with Billy."
{¶ 71} Officer Saylors' testimony explaining why he cuffed Defendant was based upon his own first hand perceptions of Defendant's conduct and appearance. It was, though of only marginal relevance, lay opinion testimony admissible pursuant to Evid.R. 701. A trial court has broad discretion whether to allow opinion testimony by a lay witness, State v. Kehoe, (1999),133 Ohio App.3d 581. We find nothing approaching an abuse of discretion on the part of the trial court in allowing this testimony by Officer Saylors.
{¶ 72} The fourth assignment of error is overruled.
 FIFTH ASSIGNMENT OF ERROR
{¶ 73} "Appellant was deprived of a fair trial because of prosecutorial misconduct."
{¶ 74} Prosecutorial misconduct typically involves making "a statement which is clearly calculated to prejudice the jury against the opposition on a matter wholly unconnected with the case, and which by no possibility could have any bearing upon it . . ." Markus, Trial Handbook For Ohio Lawyers (2003 Ed.), Section 35:7. The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. State v. Bey,85 Ohio St.3d 487, 493, 1999-Ohio-283. The focus of that inquiry is on the fairness of the trial, not the culpability of the prosecutor. Id.
{¶ 75} Generally, prosecutors are entitled to considerable latitude in opening and closing arguments. Maggio v. Cleveland
(1949), 151 Ohio St. 136; State v. Ballew, 76 Ohio St.3d 244,1996-Ohio-81. A prosecutor may freely comment in closing argument on what the evidence has shown and what reasonable inferences the prosecutor believes may be drawn therefrom. State v. Lott
(1990), 51 Ohio St.3d 160, 165. In determining whether the prosecutor's remarks were prejudicial, the State's argument must be viewed in its entirety. Ballew, supra.
{¶ 76} Defendant alleges that the prosecutor impugned defense counsel's credibility during closing argument, stating:
{¶ 77} "And Mr. Rohrkaste wants you to believe that they — they all saw different things and they're not all consistent." (T. 468).
{¶ 78} "Mr. Rohrkaste wants you to believe the police told Toby and Tora: `We have a suspect. He confessed.'" (T. 464).
{¶ 79} Defendant also complains that the prosecutor improperly appealed to the jury's emotions when commenting upon the three victims:
{¶ 80} "All three of them were able to come in here and be brave enough to get in that witness chair and testify that this is the man that came into their house." (T. 444).
{¶ 81} Lastly, Defendant complains that the prosecutor's questions during voir dire constituted an improper attempt to argue the State's case on a critical issue, the color of Defendant's shirt:
{¶ 82} "Prosecutor: Okay. Well, the question I think I asked Mr. Bubp, you know, you and Miss Updyke and Mr. Norman might be sitting there, and each of you might have a different opinion as to what color shirt I'm wearing, what color shirt Mary is wearing. But you're still all in the same area. Correct? Is that a yes?" (T. 157).
{¶ 83} We cannot see how the question was so improper as to constitute misconduct, assuming that it was improper at all. And, except for the prosecutor's gratuitous references to defense counsel by name, none of these matters he argued were unconnected with the State's case against the Defendant. While they were calculated to persuade the jury of Defendant's guilt, they did not invite the jury to prejudge the Defendant, and do not equate with the standard Judge Markus adopts for prosecutorial misconduct, that the statements made are "reprehensible." Id.
{¶ 84} The fifth assignment of error is overruled.
 SIXTH ASSIGNMENT OF ERROR
{¶ 85} "The cumulative effect of the errors occurring at trial deprived defendant of a fair trial."
{¶ 86} Defendant claims that the cumulative effect of the errors occurring during trial deprived him of a fair trial even though each error, standing alone, may not be prejudicial. Statev. DeMarco (1987), 31 Ohio St.3d 191, 196-197. In reviewing the alleged errors assigned by Defendant we have not found any error, much less the existence of multiple errors. Hence, there is no cumulative effect. State v. Garner, 74 Ohio St.3d 49,1995-Ohio-168.
{¶ 87} The sixth assignment of error is overruled. The judgment of the trial court will be affirmed.
Wolff and Young, JJ., concur.