[Cite as *State v. Simmons*, 2011-Ohio-2068.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                    :

      Plaintiff-Appellee                    :      C.A. CASE NO. 24009

vs.                                              :      T.C. CASE NO. 09CR2348

MICHELLE SIMMONS                                 :      (Criminal Appeal from
                                        Common Pleas Court)
      Defendant-Appellant                   :

. . . . . . . . .

O P I N I O N

Rendered on the 29th day of April, 2011.

. . . . . . . . .

Mathias H. Heck, Jr., Pros. Attorney; Andrew T. French, Asst. Pros. Attorney, Atty. Reg. No.0069384, P.O. Box 972, Dayton, OH 45422
      Attorneys for Plaintiff-Appellee

Ben Swift, Atty. Reg. No.0065745, 333 W. First Street, Suite 445, Dayton, OH 45402
      Attorney for Defendant-Appellant

. . . . . . . . .

GRADY, P.J.:

{¶ 1}  Defendant, Michelle Simmons, appeals from her conviction and sentence for patient abuse.

{¶ 2}  In July 2009, Defendant was a State Tested Nursing Assistant (STNA) who worked at Riverside Nursing Home in Harrison Township, Montgomery County.  Christine Leet was an eighty year old Alzheimer's patient at that nursing home who had a history of

easily becoming agitated and combative and violent. Leet was confined to a wheelchair and restrained by a lap belt. In the early morning hours of July 9, 2009, an agitated Christine Leet made a futile attempt to escape from the nursing home. Leet set off alarms on the doors she opened. The staff decided to sedate Leet, and Defendant was asked to assist in restraining Leet while the nurse administered an injection.

{¶ 3} While being held down for the injection, Leet became even more agitated and she threatened the staff. The nursing home's policy required the staff to simply walk away and allow Leet to calm down. Defendant chose, however, to taunt and antagonize Leet. Defendant coaxed Leet into a secluded TV room of the main hall, where Defendant kicked Leet's wheelchair and hit Leet in the chest and face. Defendant also pulled out a chunk of Leet's hair. Defendant then walked away, laughing.

{¶ 4} An investigation by the nursing home administrators resulted in Defendant's termination from employment because of her assault on Leet. Several other staff members were fired for watching the assault but doing nothing to stop it.

{¶ 5} Defendant was indicted on one count of patient abuse in violation of R.C. 2903.34.(A)(1). Defendant filed a motion to suppress evidence of a surveillance video from inside the nursing home. The trial court overruled the motion to suppress. Following a jury trial, Defendant was found guilty of patient abuse. The trial court sentenced Defendant to five years of community control sanctions that include ten days in the Montgomery County jail.

{¶ 6} Defendant timely appealed to this court from her conviction and sentence.

FIRST ASSIGNMENT OF ERROR

{¶ 7} "APPELLANT WAS DENIED A FAIR TRIAL THROUGH THE ADMISSION OF AN IMPROPERLY AUTHENTICATED VIDEOTAPE."

{¶ 8} Defendant argues that the trial court abused its discretion by admitting the nursing home's surveillance video, over Defendant's objection.

{¶ 9} The admission or exclusion of evidence rests within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *State v. Sage* (1987), 31 Ohio St.3d 173.

{¶ 10} "'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248, 1252. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

{¶ 11} "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *AAAA Enterprises, Inc. v. River Place Community Redevelopment* (1990), 50 Ohio St.3d 157, 161.

{¶ 12} Defendant first argues that the videotape of Defendant's attack on Leet was inadmissible because it was never properly authenticated pursuant to Evid.R. 901(A), and no chain of custody was established for this evidence. Evid.R. 901(A) requires, as a condition precedent to the admissibility of evidence, a showing that the matter in question is what it purports to be. The record demonstrates that the parties stipulated to the authenticity of this

videotape, that it is a video from Riverside Nursing Home on July 9, 2009. Their agreement satisfies Evid.R. 901(A).

{¶ 13} Defendant next argues that the videotape was inadmissible because it prejudiced Defendant. Of course, it was prejudicial. It was part of the State's evidence against Defendant showing she committed the crime of patient abuse. The fact that evidence is unfavorable to a party does not make it unfairly prejudicial or inadmissible. *State v. Wright* (1990), 48 Ohio St.3d 5, 8.

{¶ 14} Evid.R. 403(A) prohibits the admission of relevant evidence only if the probative value is substantially outweighed by the danger of <u>unfair</u> prejudice. *State v. Wright, supra.* Logically, all evidence presented by a prosecutor is prejudicial, but not all evidence unfairly prejudices a defendant. Evid.R. 403 only prohibits the latter. *Id.*

{¶ 15} Defendant's principal complaint is that the video depicts conduct by Defendant that is partially concealed behind a barrier or partial wall, and it cannot be determined from the video alone what Defendant is doing. That remains speculative. Such an argument goes to the weight, and not the admissibility, of the evidence, and in no way establishes unfair prejudice. Eyewitnesses to Defendant's assault on Leet testified at trial, describing what Defendant was doing and what was occurring as depicted on the video. To the extent the video corroborates the eyewitness testimony and refutes Defendant's own testimony as to what occurred, it has significant probative value that is not "substantially outweighed by the danger of unfair prejudice." Evid.R. 403(A). The trial court did not abuse its discretion in admitting the videotape.

{¶ 16} Defendant's first assignment of error is overruled.

SECOND ASSIGNMENT OF ERROR

{¶ 17} "APPELLANT WAS DENIED A FAIR TRIAL THROUGH INEFFECTIVE ASSISTANCE OF COUNSEL."

{¶ 18} Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arose from counsel's performance. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must affirmatively demonstrate to a reasonable probability that were it not for counsel's errors, the result of the trial would have been different. *Id*., *State v. Bradley* (1989), 42 Ohio St.3d 136.

{¶ 19} Defendant claims that her counsel performed deficiently by failing to obtain and review the victim's, Christine Leet's, medical records. According to Defendant, had counsel reviewed Leet's medical records, something useful might have been discovered regarding the medications Leet was taking that offered an alternative explanation for why Leet's hair came out, other than the State's claim that Defendant pulled out a wad of Leet's hair. The claim is too speculative to demonstrate that Defendant was prejudiced by counsel's failure. Furthermore, two of the State's witnesses testified at trial that they saw Defendant pull Leet's hair, as well as punch Leet in the face and body. In view of that evidence, we cannot say that there is a reasonable probability that had Defendant's counsel obtained Leet's medical records, Defendant would have been found not guilty. No prejudice, as defined by *Strickland*, has been demonstrated.

{¶ 20} Defendant next claims that her counsel performed deficiently by eliciting

inadmissible prior bad acts evidence through a line of questioning that allowed Defendant's former supervisor, Christy Smith, to reveal that Defendant had previously been investigated for pulling another patient's hair:

{¶ 21} "Q.   Before the alleged attack, were you aware of any past violent outburst by Michelle?

{¶ 22} "A.   Michelle was investigated four months prior for pulling hair.

{¶ 23} "Q.   Was she terminated at that time?

{¶ 24} "A.   No.   There were no evidence supporting that Michelle had pulled the hair at that time.

{¶ 25} "Q.   And was that allegation based on a complaint made by somebody else there?

{¶ 26} "A.   No.   A demented resident made the complaint."   (T. 84).

{¶ 27} Defendant argues that this testimony about a previous hair pulling allegation constitutes a prior bad act that prejudiced Defendant by allowing the jury to impermissibly infer that because Defendant may have previously pulled another patient's hair, she probably pulled Leet's hair.   According to Defendant, this prior bad acts evidence was inadmissible per Evid.R. 404(B).   As the evidence demonstrates, however, the previous allegation about hair pulling does not constitute another crime, wrong, or bad act because there was no evidence that the previous incident ever occurred.   That benefits, not prejudices, Defendant. Additionally, this evidence further benefitted Defendant by demonstrating that patients with dementia, like Leet, can make claims of abuse that are untrue, a fact to which Christy Smith testified.   No deficient performance by counsel, much less resulting prejudice, is

demonstrated.

{¶ 28} Defendant next reargues her first assignment of error and claims that her counsel performed deficiently by failing to object to the fact that the nursing home's surveillance video was not properly authenticated. As we pointed out in disposing of Defendant's first assignment of error, this claim is frivolous because the parties stipulated to the authenticity of that video. No deficient performance by counsel is demonstrated.

{¶ 29} Defendant next claims that her counsel performed deficiently by failing to object to this leading question by the prosecutor:

{¶ 30} "Q. Did she (Leet) eventually roll out of the TV room?

{¶ 31} "A. Yes, she did.

{¶ 32} "Q. And was she more sullen at that time, meaning did she seem somewhat defeated?

{¶ 33} "A. Yeah. She was real like in a sad demeanor. She was quiet after it happened the rest of the night." (T. 108).

{¶ 34} A leading question is one that instructs the witness how to answer or puts into his or her mouth words to be echoed back. *State v. D'Ambrosio* (1993), 67 Ohio St.3d 185, 190. Leading questions may not be used on direct examination. Evid.R. 611(C). A question is not leading merely because it directs the witness to a point to which the witness is asked to respond. *State v. Carruth*, Montgomery App. No. 19997, 2004-Ohio-2317. Furthermore, by asking the witness, Melissa Rickman, <u>did</u> Leet seem somewhat defeated, any leading suggestion is avoided. *Id*. No deficient performance by counsel is demonstrated.

{¶ 35} Defendant next claims that her counsel performed deficiently by failing to

object to a misstatement by the prosecutor during closing argument. When discussing the legal definition of "physical harm," the prosecutor inadvertently misspoke and described it as "psychological" impairment, as opposed to "physiological" impairment, as R.C. 2901.01(A)(3) provides. The prosecutor stated:

**{¶ 36}** "And once again, you're going to get a definition of what abuse is. The Judge is going to give it to you. But it's quite simply knowingly causing physical harm, that when the Defendant did those actions, she knew that she was going to hurt Christine. There is no other reason to do that than to harm her. And it can be any injury, illness, or psychological impairment regardless of its gravity or duration." (T. 219-220).

**{¶ 37}** The State's witnesses in this case all testified regarding the physical harm Defendant caused by hitting, kicking, and pulling Leet's hair. In addition, the trial court properly instructed the jury that the definition of physical harm included "physiological" impairment.

**{¶ 38}** "Physiological" refers to characteristics of or appropriate to an organism's healthy or normal functioning - contrasted with pathological. Webster's Third New International Dictionary. We cannot conclude that but for one, isolated incident where the prosecutor misspoke and said psychological, when she meant physiological, there is a reasonable probability Defendant would have been found not guilty. No prejudice to Defendant, as defined by *Strickland* resulted from counsel's performance.

**{¶ 39}** Finally, Defendant complains that her counsel performed deficiently by failing to object to hearsay. Melissa Rickman, an eyewitness to Defendant's assault on Leet, testified about what transpired when the attack ended:

{¶ 40} "Q.   And what was the Defendant doing as she left?

{¶ 41} "A.   Laughing.

{¶ 42} "Q.   And what did Christine do?

{¶ 43} "A.   Just was just upset, and she said she was – oh, I'm going to have a black eye and, you know, the next day.   That's what she was saying.   She just was made, upset." (T. 107-108).

{¶ 44} The witness's testimony  repeating what Leet had said, that she was going to have a black eye, is inadmissible hearsay.   Evid.R. 801(C), 802.   However, Melissa Rickman testified that she saw Defendant punch Leet in the face.   Elizabeth Dudon likewise saw Defendant punch Leet.   The witnesses also testified that Leet did not develop a black eye.   Based upon this evidence, we cannot say that but for  defense counsel's failure to object to the single, isolated hearsay statement by Rickman, there is a reasonable probability that Defendant would have been acquitted by the charges.   Prejudice as defined by *Strickland* has not been demonstrated.   Ineffective assistance of counsel has not been shown.

{¶ 45} Defendant's second assignment of error is overruled.

THIRD ASSIGNMENT OF ERROR

{¶ 46} "THE COURT DEPRIVED APPELLANT OF A FAIR TRIAL BY LIMITING EVIDENCE CONCERNING THE CREDIBILITY OF ONE OF THE STATE'S WITNESSES."

{¶ 47} Defendant argues that the trial court erred by unduly limiting the scope of cross-examination of State's witness Elizabeth Dudon, which denied Defendant her rights to due process and a fair trial.   During cross-examination of Dudon, the following exchange

occurred:

{¶ 48} "Q.   You've never been written up for a sexual relationship with somebody --

{¶ 49} "MS. HEAPY: Objection, Your Honor.

{¶ 50} "MR. BAMBERGER: – named Chris?

{¶ 51} "THE WITNESS: Are you serious?

{¶ 52} "MS. HEAPY:   - as to relevance.

{¶ 53} "THE COURT: Counsel approach, please.

{¶ 54} BENCH CONFERENCE

{¶ 55} "THE COURT: Is there some kind of history that you're aware of?

{¶ 56} "MR. BAMBERGER: Yes.   I'm pursuing an alternate theory that if there was any attack, she was involved and she's accusing my client because at the time she had such a record.

{¶ 57} "THE COURT: That's not what I asked.   My question is do you have a good-faith basis for asking the questions like you have some kind of indication that those things have happened?

{¶ 58} "MR. BAMBERGER: Yes.

{¶ 59} "THE COURT: And is that from --

{¶ 60} "MS. HEAPY: What is that --

{¶ 61} "THE COURT:   – something other than from your client?

{¶ 62} "MR. BAMBERGER: No.

{¶ 63} "THE COURT: Then I'm not going to allow you to get into alternate theories like that, and I will sustain the objection." (T. 152-153).

{¶ 64} Evid.R. 611 provides in relevant part:

{¶ 65} "(A) Control by court. The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

{¶ 66} "(B) Scope of cross-examination. Cross-examination shall be permitted on all relevant matters and matters affecting credibility."

{¶ 67} In *State v. Ross*, Montgomery App. No. 22958, 2010-Ohio-843, at ¶9, we observed:

{¶ 68} "On cross-examination, a party may inquire into all matters pertinent to the case that the party calling the witness would have been entitled or required to raise. *In re Fugate* (Sept. 22, 2000), Darke App. No. 1512, citing *Smith v. State* (1932), 125 Ohio St. 137, 180 N.E. 695, paragraph one of the syllabus. However, the trial court has broad discretion in imposing limits on the scope of cross-examination. *State v. Cobb* (1991), 81 Ohio App.3d 179, 183, 610 N.E.2d 1009. Trial judges have wide latitude 'to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.' *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674. An appellate court will not interfere with a trial court's decision about the scope of cross-examination absent an abuse of discretion. *Fugate,* supra. The term 'abuse of discretion' 'connotes more than an error in * * * judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' *Blakemore v. Blakemore* (1983), 5 Ohio St.3d

217, 219, 450 N.E.2d 1140."

{¶ 69} In *State v. Bolling*, Montgomery App. No. 20225, 2005-Ohio-2509, at ¶64, we stated:

{¶ 70} "The credibility of any witness may be attacked by any party. Evid.R. 607(A). However, a questioner must have a reasonable basis for asking any question pertaining to impeachment that implies the existence of an impeaching fact. Evid.R. 607(B); *State v. Gillard* (1988), 40 Ohio St.3d 226. This rule prevents counsel from testifying and asserting as fact mere innuendo that is included within a question when there is no reasonable belief that a factual predicate exists for the implied impeaching fact. Weissenberger, Ohio Evidence Courtroom Manual (2005), p. 218."

{¶ 71} Defense counsel, by his own admission, did not have a good faith basis for asking his question that implies the existence of an impeaching fact, whether Dudon had ever been disciplined by the nursing home for having a sexual relationship with somebody named Chris, other than what Defendant had said to her counsel. Absent evidence that an independent factual predicate exists for the implied impeaching fact, the trial court's exclusion of that question was not an unreasonable exercise of the discretion conferred on the court by Evid.R. 611. No abuse of discretion by the court has been demonstrated.

{¶ 72} Defendant's third assignment of error is overruled.

FOURTH ASSIGNMENT OF ERROR

{¶ 73} "APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶ 74} Defendant argues that her conviction for patient abuse is not supported by

legally sufficient evidence and is against the manifest weight of the evidence because the State failed to prove the physical harm element of the charge.

{¶ 75} Defendant was found guilty of patient abuse in violation of R.C. 2903.34. That section provides:

{¶ 76} "(A) No person who owns, operates, or administers, or who is an agent or employee of, a care facility shall do any of the following:

{¶ 77} "(1) Commit abuse against a resident or patient of the facility.

{¶ 78} "Abuse" is defined in R.C. 2903.33(B):

{¶ 79} "'Abuse' means knowingly causing physical harm or recklessly causing serious physical harm to a person by physical contact with the person or by the inappropriate use of a physical or chemical restraint, medication, or isolation on the person."

{¶ 80} "Physical harm" is defined in R.C. 2901.01(A)(3):

{¶ 81} "'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration."

{¶ 82} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. *State v. Thompkins,* (1997), 78 Ohio St.3d 380. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks* (1991), 61 Ohio St.3d 259:

{¶ 83} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt

beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶ 84} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. *State v. Hufnagle* (Sept. 6, 1996), Montgomery App. No. 15563. The proper test to apply to that inquiry is the one set forth in *State v. Martin* (1983), 20 Ohio App.3d 172, 175:

{¶ 85} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52.

{¶ 86} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass* (1967), 10 Ohio St.2d 230. In *State v. Lawson* (August 22, 1997), Montgomery App. No. 16288, we observed:

{¶ 87} "Because the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness."

{¶ 88} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. *State v. Bradley* (Oct. 24, 1997), Champaign App. No. 97-CA-03.

{¶ 89} Based upon the fact that an examination of the eighty year old victim by Director of Nursing Christy Smith failed to reveal any physical injuries, and none of the nursing assistants reported seeing any physical injuries on the victim, Defendant argues that the State failed to prove the physical harm element of patient abuse.

{¶ 90} Melissa Rickman testified that Defendant was taunting Leet in an effort to make her angry. Defendant eventually coaxed Leet into the TV room. Rickman saw Defendant pull on Leet's shirt, kick at Leet, hit Leet in the chest, and hit Leet in the face near an eye. Rickman also saw Defendant pull Leet's hair.

{¶ 91} Elizabeth Dudon testified that Defendant was trying to antagonize Leet. Defendant lured Leet into the TV room and then began kicking Leet's wheelchair. Dudon also saw Defendant pull a wad of hair from Leet's head, and punch Leet in the face.

{¶ 92} After learning about the assault the next day, Director of Nursing Christy Smith examined Leet. Smith found strands of Leet's hair on the back of her wheelchair. Smith viewed the surveillance videotape of the incident and turned it over to police. Smith fired Defendant for her assault on Leet, and fired Rickman and Dudon for watching the assault but doing nothing to stop it.

{¶ 93} Defendant testified in her own defense and denied everything. Defendant denied taunting Leet, but the videotape contradicts that denial. Defendant claimed she was trying to get away from Leet who was coming at her in her wheelchair. The videotape shows

Defendant following Leet into the TV room and at times coming toward Leet. It also shows Defendant kicking at Leet's wheelchair, which Defendant denied. Defendant claimed she directed Leet into the TV room because Leet's aid was already there. But the video shows Leet enter the TV room first, followed closely by Defendant, and nobody else entering the room until after Defendant and Leet started to tussle.

{¶ 94} Viewing this evidence in a light most favorable to the State, a rational trier of facts could find all of the elements of patient abuse proven beyond a reasonable doubt. Defendant's conviction is supported by legally sufficient evidence.

{¶ 95} The jury did not lose their way in this case simply because they chose to believe the State's witnesses rather than Defendant, which they had a right to do. The credibility of the witnesses and the weight to be given to their testimony were matters for the trier of facts, the jury here, to decide. *State v. DeHass, supra*.

{¶ 96} Reviewing this record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the trier of facts lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence.

{¶ 97} Defendant's fourth assignment of error is overruled.

FIFTH ASSIGNMENT OF ERROR

{¶ 98} "THE CUMULATIVE EFFECT OF THE ERRORS OCCURRING AT TRIAL DEPRIVED APPELLANT OF A FAIR TRIAL."

{¶ 99} Defendant argues that due to the cumulative effect of the trial court's multiple errors, she was denied a fair trial. *State v. Demarco* (1987), 31 Ohio St.3d 191. However,

because Defendant has failed to demonstrate multiple errors committed by the trial court, the cumulative error doctrine is not applicable  in this case.  *State v. Whitfield*, Montgomery App No. 22432, 2009-Ohio-293.

{¶ 100}	Defendant's fifth assignment of error is overruled.  The judgment of the trial court will be affirmed.

FROELICH, J. And BROGAN, J., concur.

(Hon. James A. Brogan, retired from the Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)

Copies mailed to:

Andrew T. French, Esq.
Ben Swift, Esq.
Hon. Barbara P. Gorman, Presiding Judge