[Cite as *State v. Lindsey*, 2012-Ohio-3105.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                          :

    Plaintiff-Appellant            :            C.A. CASE NO.    24943

v.                                     :            T.C. NO.    11 CR 1812
                                                         11 CR 1833

MATTHEW D. LINDSEY                      :

    Defendant-Appellee            :            (Appeal from Common
                                              Pleas Court, Criminal Division)

                                      :

. . . . . . . . . .

**O P I N I O N**

Rendered on the   6th   day of    July   , 2012.

. . . . . . . . . .

R. LYNN NOTHSTINE, Atty. Reg. No. 0061560, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellant

ADELINA E. HAMILTON, Atty. Reg. No. 0078595 and ALYSIA A. GOSS, Atty. Reg. No. 0086398, Assistant Public Defenders, 117 South Main Street, Suite 400, Dayton, Ohio 45422
      Attorneys for Defendant-Appellee

. . . . . . . . . .

DONOVAN, J.

    **{¶ 1}**    Plaintiff-appellant, State of Ohio, appeals a judgment of the Montgomery

County Court of Common Pleas sustaining defendant-appellee Matthew Lindsey's motion to suppress evidence regarding his stop and arrest by a Mongomery County Sheriff's deputy on May 27, 2011. The trial court's decision was filed on Dec. 2, 2011. The State of Ohio filed a timely notice of appeal with this court on Dec. 9, 2011.

{¶ 2}    Deputy Fazzari was on patrol in Washington Township at approximately 3 A.M. on May 27, 2011. Dep. Fazzari was in a marked car patrolling Penbrooke Trail, Agate Trail and Onyx Trail. Three of these streets form a semicircular loop. Dep. Fazzari was not dispatched to the area; he was not looking for a particular suspect or a specific vehicle, rather, he was on routine patrol. The deputy was aware that there had been a series of vehicle break-ins and thefts from sheds in the Washington Township area. Dep. Fazzari was also aware that these burglaries were not limited to the area he was patrolling. There were no reported vehicle descriptions in the crimes.

{¶ 3}    While Dep. Fazzari was at a stop sign at the intersection of Penbrooke and Agate Trail, he observed defendant-appellee Lindsey driving through the intersection. Lindsey was travelling at a low speed, approximately 10 to 15 miles per hour. The speed limit in the area was 25 miles per hour. As Lindsey's headlights illuminated Dep. Fazzari's patrol car, Lindsey slowed further, braking abruptly. As Lindsey passed, Deputy Fazzari observed that Lindsey and his passenger were sitting upright; Lindsey's hands were at the ten and two o' clock position on the steering wheel. Dep. Fazzari further observed that Lindsey was not wearing his seat belt. Dep. Fazzari decided to follow Lindsey, and did so for about one half of a mile.

{¶ 4}    When Lindsey turned onto Onyx, effectively repeating the circular path he

had already driven, Dep. Fazzari turned on his patrol car lights and initiated a stop. After he activated his siren, Dep. Fazzari saw what he described as "furtive movements" made by the passenger in the front seat of the vehicle. Additionally, Dep. Fazzari testified that it took "an extended time" for the driver of the vehicle, later identified as Lindsey, to come to a stop. Dep. Fazzari then approached Lindsey's vehicle and began to speak with him. Lindsey remained in the vehicle. Dep. Fazzari detected the smell of alcohol about the cabin of the vehicle, and noticed that Lindsey was not making eye contact. After asking Lindsey to look at him, Dep. Fazzari noticed that his eyes were watery and bloodshot. Dep. Fazzari asked Lindsey whether he had been drinking alcohol. Lindsey responded that he had not, at which point Dep. Fazzari asked Lindsey to exit the vehicle. When asked for identification, Lindsey responded that he did not have any. The passenger's pant legs were wet up to his shins. Dep. Fazzari also noticed inside the vehicle: a knit hat, black gloves, a large screwdriver, an open case of beer, a radio, an in-dash type car radio and a woman's purse or bag as well as a lady's apparel shopping bag. Following a police check on the identity of Lindsey and his passenger, Dep. Fazzari learned that both men were under multiple license suspensions.

{¶ 5} After both men were outside of the vehicle, Dep. Fazzari asked Lindsey about his destination. Lindsey responded that he was headed to Washington Village. Dep. Fazzari again asked Lindsey whether he had been drinking alcohol. This time, Lindsey responded that "…he may have had something to sip." Dep. Fazzari noted that he also smelled alcohol when talking to Lindsey outside of the vehicle, and that when he asked what Lindsey "had to sip," Lindsey replied "beer." Dep. Fazzari then administered a series of

standardized field sobriety tests. The tests indicated that Lindsey was intoxicated. Lindsey was Mirandized and placed under arrest.

{¶ 6} Three counts against Lindsey arose out of the traffic stop. Lindsey was indicted by a Montgomery County Grand Jury on June 21, 2011, for one count of operation of a vehicle while under the influence of alcohol or a drug of abuse, a violation of R.C. 4511.19(A)(2)/4511.19(G)(1)(d), a felony of the fourth degree. The indictment also included a second OVI count, in violation of R.C. 4511.19(A)(1)/4511.19(G)(1)(d), also a felony of the fourth degree. A second indictment was issued three days later, for one count of receiving stolen property, in violation of R.C. 2913.51(A), a felony of the fifth degree. Lindsey moved to suppress all evidence obtained in the traffic stop conducted by Dep. Fazzari. Lindsey's suppression hearing was held on September 7, 2011. The trial court overruled Lindsey's motion to suppress in a decision filed on Oct. 25, 2011. However, upon his motion for reconsideration of the October 25, 2011 decision, the trial court sustained Lindsey's motion to suppress. The trial court's decision to sustain the motion was prompted at least in part by our decision in *State v. Studley*, 2d Dist. Greene No. 2010 CA 81, 2011-Ohio-5563.

{¶ 7} It is from this judgment that the State now appeals.

{¶ 8} The State's sole assignment of error is as follows:

THE TRIAL COURT ERRED BY SUSTAINING MATTHEW LINDSEY'S MOTION TO SUPPRESS WHERE THE TOTALITY OF THE CIRCUMSTANCES DEMONSTRATE THE DEPUTY SHERIFF HAD A REASONABLE, ARTICULABLE SUSPICION THAT CRIMINAL

ACTIVITY WAS AFOOT BY THE TIME LINDSEY ACQUIESCED TO THE DEPUTY'S SIGNAL TO STOP HIS VEHICLE.

{¶ 9} In its sole assignment, the State contends that the trial court erred when it sustained Lindsey's motion to suppress on the basis of our recent holding in *Studley*, 2d Dist. Greene No. 2010 CA 81, 2011-Ohio-5563. In *Studley*, we held that a police officer did not have a reasonable, articulable suspicion to institute the stop of van in residential area at approximately 3:15 a.m. when the officer had no information linking the van to criminal activity, and he observed no traffic violations prior to the stop. Initially, the State argues that our holding in *Studley* is based on facts which are distinguishable from the circumstances involved in the instant case. In the alternative, if *Studley* is not distinguishable, the State asserts that the case was wrongly decided and ought to be reversed. For the following reasons, we find that the trial court correctly sustained Lindsey's motion to suppress. Moreover, we reaffirm our holding in *Studley*.

{¶ 10} In regards to a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist. 1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac,* 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist. 1994). Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal

standard is satisfied. *Id.*

**{¶ 11}** The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution protect individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A traffic stop by a law-enforcement officer must comply with the Fourth Amendment's reasonableness requirement. *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

**{¶ 12}** A police officer may stop and detain a motorist when he has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit any criminal offense, including a traffic offense, and no independent reasonable and articulable suspicion of other criminal activity is required under *Terry*. *State v. Stewart*, 2d Dist. Montgomery No. 19961, 2004-Ohio-1319, at ¶13; *Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996). We determine the existence of reasonable suspicion by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047.

**{¶ 13}** "[C]ourts still retain their traditional responsibility to guard against police conduct which is overbearing or harassing, or which trenches upon personal security without the objective evidentiary justification which the Constitution requires. When such conduct is identified, it must be condemned by the judiciary and its fruits must be excluded from evidence in criminal trials." *Studley*, 2d Dist. Greene No. 2010 CA 81, 2011-Ohio-5563, quoting *Terry*, 392 U.S. at 15.

{¶ 14}   At the suppression hearing, Dep. Fazzari testified that there had been a string of break-ins in Washington Township.   The break-ins, however, were not confined to the residential plat area of Penbrooke and Agate Trail.   We also note that Dep. Fazzari testified that the break-ins had been occurring for months.

{¶ 15}   Additionally, Dep. Fazzari testified that he had not received a call for a break-in on May 27, 2011, for that immediate area, nor was he looking for a suspect who matched either Lindsey's description or a description of the vehicle he was driving. Moreover, no evidence was adduced which included any description of a suspect or vehicle used in the prior thefts.   Thus, Dep. Fazzari was not on the lookout for a vehicle similar to the one Lindsey was driving.

{¶ 16}   When he passed Dep. Fazzari's cruiser which was located at the corner of Penbrooke and Agate, Lindsey slowed his vehicle down.   Dep. Fazzari testified that other than suddenly slowing his speed, Lindsey did not commit any traffic or equipment violations.   Although Dep. Fazzari observed that he was not wearing his seatbelt which, standing alone, is insufficient to initiate a traffic stop, Lindsey was doing nothing out of the ordinary or against the law.   Dep. Fazzari testified that he observed that Lindsey was sitting up straight in the driver's seat with his hands in the ten and two o' clock position on the steering wheel.   Dep. Fazzari also testified that Lindsey failed to acknowledge or make eye contact with him.   Moreover, Dep. Fazzari testified that the speed limit in the immediate area was twenty-five miles per hour.   Thus, the fact that Lindsey was driving at ten to fifteen miles per hour was neither abnormal nor otherwise remarkable.

{¶ 17}   Dep. Fazzari further testified that he followed Lindsey as he continued to

drive through the neighborhood for approximately one-half of a mile. After several legal turns through the neighborhood, Lindsey eventually looped back to where he and Officer Fazzari had first come into visual contact. At this point, Dep. Fazzari turned on his flashing lights and siren and initiated a traffic stop of Lindsey's vehicle. Dep. Fazzari testified that it took an extended period of time for Lindsey to stop his vehicle. We also note that Dep. Fazzari testified that it was not until *after* he turned on his flashing lights and initiated the stop that he observed the passenger in Lindsey's vehicle make furtive movements. Regarding his reason for initiating the traffic stop of Lindsey's vehicle, Dep. Fazzari testified on cross-examination as follows:

> Dep. Fazzari: *I wasn't sure what he was doing, ma'am, and that's why I stopped him.*

{¶ 18}   Under the totality of the circumstances, Dep. Fazzari did not possess a reasonable, articulable suspicion to initiate a traffic stop of Lindsey. Dep. Fazzari admitted that Lindsey did not commit any traffic or equipment violation justifying a traffic stop. Although the immediate area had been subject to a string of vehicle break-ins in recent months, no break-ins had been reported on that date of the stop, nor was anyone matching Lindsey's description or the description of his vehicle implicated therein. While it was early in the morning, Dep. Fazzari observed nothing indicating that criminal activity was afoot. In fact, Dep. Fazzari conceded that he "wasn't sure what [Lindsey] was doing," and that was his basis for initiating the stop. Clearly, Dep. Fazzari did not possess a reasonable, articulable suspicion that Lindsey had committed a criminal act justifying the initial stop. Simply being unsure of what a suspect is doing is a wholly insufficient basis upon which to

stop and question an individual.

{¶ 19}   Upon review, we find that the instant case is not distinguishable from our recent decision in *Studley*, 2d Dist. Greene No. 2010 CA 81, 2011-Ohio-5563.   Both cases involved individuals traveling in slowly moving vans at approximately three a.m. in residential areas that had recently been struck with a series of vehicle break-ins.   In neither case did the arresting officer observe the suspects commit any traffic or equipment violations.   The only apparent difference is that the officer in *Studley* observed individuals in the van make furtive movements prior to the initiation of the traffic stop, whereas in the instant case, Dep. Fazzari did not observe any furtive movements until after he turned on his flashing lights.   This minor difference, however, is irrelevant.   "Law enforcement officers may briefly stop and detain an individual for investigation if the officers have a reasonable, articulable suspicion that criminal activity may be afoot.   That is something more than an unparticularized suspicion or mere hunch, but less than the level of suspicion required for probable cause.   To satisfy that standard, police must be able to point to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the intrusion. (Citations omitted)." *Studley*, *supra*, at ¶ 54.   In the instant case, Dep. Fazzari's testimony fails to establish any specific and articulable facts which reasonably warrant the stop.

{¶ 20}   Accordingly, we decline the State's invitation to reconsider our decision in *Studley*.   We cannot ignore the Fourth Amendment's prohibition on unlawful search and seizure in the context of a traffic stop initiated with no reasonable, articulable suspicion of criminal activity by the arresting officer.   Moreover, we are constrained by the doctrine of

stare decisis which requires that we continue to adhere to *Studley* as the law in the Second District. "The doctrine of stare decisis is designed to provide continuity and predictability in our legal system. We adhere to stare decisis as a means of thwarting the arbitrary administration of justice as well as providing a clear rule of law by which the citizenry can organize their affairs." *Rocky River v. State Emp. Relations Bd.*, 43 Ohio St.3d 1, 4-5, 539 N.E.2d 103 (1989).

**{¶ 21}** The State's sole assignment of error is overruled.

**{¶ 22}** The State's only assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

GRADY, P.J., concurring:

**{¶ 23}** I dissented in *State v. Studley*, 2d Dist. Greene No. 2010CA81, 2011-Ohio-5563, because the officer who performed the stop in that case articulated a reasonable basis to suspect that the persons in the vehicle he stopped were involved in criminal conduct.

**{¶ 24}** In *Studley*, Officer Holley testified that he was aware of approximately forty vehicle break-ins and thefts within the last month in the particular residential plat through which the vehicle was travelling, and that no one had been apprehended for those offenses. That, combined with the time, 3:15 a.m., and the vehicle's slow rate of speed and the passenger's conduct, looking back at the officer and moving from side to side, leaning forwards and backwards, presented a reasonable basis to suspect that the vehicle's passengers had some connection with those unsolved and numerous break-ins and thefts.

{¶ 25}     In the present case, the time was much the same, 3:00 a.m., and the vehicle was travelling slowly and in a random fashion, at a slow rate of speed.  Its driver and passenger were not moving about, however, and did not otherwise exhibit suspicious conduct.  More importantly, the prior offenses about which the officer was aware were not specific to the area where the vehicle was seen, but had occurred throughout Washington Township, a large and  populous Dayton suburb.  There was not a sufficient nexus with criminal conduct to support a finding that the stop was reasonable, under those circumstances.

. . . . . . . . . .

HALL, J., concurring:

{¶ 26}     I agree with the trial court that, based on the specific facts of this case, the State did not demonstrate that the officer had a reasonable, articulable suspicion that criminal activity was afoot to justify the stop of the defendant's car. I write separately to ponder  the elusive distinction between constitutional and unconstitutional early-morning, residential traffic stops and to explain my decision to concur in judgment in *State v. Studley*, 2d Dist. Greene No. 2010CA81, 2011-Ohio-5563, which has been used in support of the decision herein.

{¶ 27}     In *Studley*, an officer stopped a vehicle, with no observable traffic violation, in a residential neighborhood in the early-morning hours. The vehicle appeared to be traveling aimlessly in an area where there had been numerous recent thefts from automobiles. But the officer observed suspicious movement before the stop. I concurred in judgment, without opinion, to suppress the evidence in *Studley*, not so much because I was

concerned about the initial stop of the vehicle but because, after the stop, the officer learned that the driver had a valid license and that he and his friends were just driving around before going home. Then, without any objective and particularized indication that there was any illegal activity, the officer asked if he could search the car and had the three other passengers, one of whom was Studley, exit the van. I agreed with the part of the *Studley* decision that found this to be unreasonable, as "[t]he facts [did] not justify a request to go on a fishing expedition for evidence of some prior theft." *Id.* at ¶ 62. Therefore, in my view, the evidence in *Studley* should have been suppressed, which led me to concur in judgment.

{¶ 28} In contrast with *Studley*, the officer in this case did not articulate a reasonable suspicion to stop the vehicle . The totality of the circumstances established that the car was driving slowly, possibly aimlessly, at about 3:00 a.m. in a residential neighborhood. That's it. The officer stated the driver was sitting erect with both hands on the wheel, and the driver or passenger did not acknowledge the officer or look at him. But those facts do not add to a suspicion of criminal activity. The officer stated that after he turned on his overhead lights to initiate a stop, he observed furtive movement and the car did not stop right away. But those facts don't create a reasonable suspicion of criminal activity to support initiation of the stop. The officer testified he was aware of car break-ins and unlocked vehicle entries, but he didn't relate them to this stop. He stated he stopped the vehicle because of its speed and circling in the area. He explained: "I believe there may be a problem. I stopped him to investigate the possible problem." It would seem that the unusually slow speed would lead to a reasonable inference that the driver was under the influence, but the officer did not testify to, or explain, that suspicion. In the final analysis, I

agree with the trial court that the facts do not demonstrate a reasonable suspicion to initiate a traffic stop and, therefore, concur.

. . . . . . . . . .

Copies mailed to:

R. Lynn Nothstine
Adelina E. Hamilton
Alysia A. Goss
Hon. Dennis J. Langer