[Cite as *State v. Alsup*, 2014-Ohio-4403.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                        :

    Plaintiff-Appellee                           :            C.A. CASE NO.    26048

v.                                                   :            T.C. NO.    13-CR-2507

KENNETH ALSUP                                        :            (Criminal appeal from
                                                                  Common Pleas Court)

    Defendant-Appellant                          :

                                                     :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____3rd____ day of ____October____, 2014.

. . . . . . . . . .

MATHIAS H. HECK, JR., by TIFFANY C. ALLEN, Atty. Reg. #0089369, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
    Attorneys for Plaintiff-Appellee

JOANNA LENEFONTE, Atty. Reg. 0090480, Beck Law Office, L.L.C., 1370 North Fairfield Road, Suite C, Beavercreek, Ohio 45324
    Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1}  Defendant-appellant Kenneth Alsup appeals from his conviction and

sentence for one count of possession of cocaine (less than five grams), in violation of R.C. 2925.11(A), a felony of the fifth degree. Alsup filed a timely notice of appeal with this Court on January 10, 2014.

{¶ 2} The incident which forms the basis for the instant appeal occurred on the night of August 12, 2013, at approximately 10:00 p.m. when Dayton Police Officer Karim Hassan was on routine patrol in the vicinity of the Circle K convenience store located at 1918 East Fifth Street in Dayton, Ohio. Officer Hassan testified that he had been on the police force for approximately seven months and that he was assigned to work the shift that began at 3:30 p.m. and ended at 11:30 p.m. As part of his patrol, Officer Hassan routinely drove by the Circle K on East Fifth Street at night in order to check on the store and its employees. Officer Hassan testified that he had responded to numerous calls at the store on prior occasions concerning intoxicated individuals and those accused of shoplifting.

{¶ 3} As he drove down East Fifth Street on the night in question, Officer Hassan observed an individual, later identified as Alsup, "stumbling" down the sidewalk in an apparently intoxicated state. Tr. 8, Ln. 5-8. Officer Hassan testified that he was concerned for Alsup's safety based on his drunken gait. Alsup was walking in the direction of the Circle K. Officer Hassan turned his cruiser around at the end of the street and parked in the lot in front of the Circle K. Officer Hassan testified that he observed that Alsup was "having a hard time opening the door of the store" before he finally was able to enter. Tr. 9, Ln. 21-23.

{¶ 4} Officer Hassan entered the store shortly after Alsup and spoke to the employee operating the cash register. From his vantage point, Officer Hassan observed

Alsup walk over to the beer cooler and stand there. Officer Hassan testified that the employee he was speaking to also observed Alsup and stated that she was "not going to sell him any more beer because he looks like he had enough." Tr. 10, Ln. 21-22. After a short time, Alsup exited the store without buying anything. Officer Hassan observed Alsup walk out the door and turn left.

{¶ 5} Officer Hassan finished speaking to the store employee and followed Alsup outside. At that point, Officer Hassan observed Alsup urinating on the right side/corner of the building with his back to the parking lot of the store. Officer Hassan immediately walked over and announced his presence to Alsup. Officer Hassan testified that he said, "Sir, we need to talk but just finish what you're doing and we'll talk." Tr. 12, Ln. 11-14. In response, Alsup stated, "I got nothing on me, man." *Id.* Officer Hassan testified that there were customers outside the store watching the exchange between himself and Alsup. Officer Hassan indicated that the other customers were able observe Alsup's conduct as they were laughing at the situation.

{¶ 6} Officer Hassan permitted Alsup to finish urinating before escorting him to the cruiser. As they approached the cruiser, Officer Hassan informed Alsup that he was being arrested for public indecency. Alsup stumbled as he walked to the cruiser, and Officer Hassan could smell alcohol emanating from him. Officer Hassan testified that he ordered Alsup to put his hands on the back of the cruiser. Before Officer Hassan could perform a search incident to an arrest, Alsup reached into his left pant pocket and pulled out what appeared to be a black do-rag and another object Officer Hassan could not identify right away, dropping them to the ground. Alsup placed his hands on the cruiser and Officer

Hassan performed a search incident to the arrest. Officer Hassan handcuffed Alsup and placed him in the back of the cruiser. Alsup slumped over in the seat and began mumbling to himself before appearing to pass out entirely.

{¶ 7} Officer Hassan walked back over to the area where Alsup dropped the two objects, and he retrieved them. The first object was a black do-rag, as Officer Hassan had initially observed. The second object, however, was a clear plastic baggie containing what appeared to be cocaine. The substance in the baggie was tested using cobalt reagent giving a positive result for cocaine. Ultimately, Officer Hassan issued Alsup a citation for public intoxication, and arrested him for public indecency and possession of cocaine.

{¶ 8} On October 2, 2013, Alsup was indicted for one count of possession of cocaine (less than five grams), in violation of R.C. 2925.11(A), a felony of the fifth degree. At his arraignment on October 31, 2013, Alsup stood mute, and the trial court entered a plea of not guilty on his behalf.

{¶ 9} Alsup filed a motion to suppress on November 12, 2013, in which he sought suppression of the cocaine obtained during a warrantless search and seizure that he claimed was not justified under the circumstances surrounding his arrest. A hearing was held on said motion on November 25, 2013. On November 26, 2013, the trial court announced its findings of fact and conclusions of law from the bench before overruling Alsup's motion to suppress.

{¶ 10} On December 3, 2013, Alsup pled no contest to one count of possession of cocaine. The trial court found Alsup guilty of the charged offense and sentenced him to community control not to exceed five years. The trial court ordered Alsup to attend the

S.T.O.P. program and maintain a full-time job. The trial court further ordered Alsup to pay his child support as ordered, attend three NA or AA meetings per week, and the court suspended his driver's license for six months. Lastly, the trial court placed Alsup on a "no breaks" status, indicating that if he violated any of the terms of his community control requirements, he would immediately be sent to prison to serve a twelve-month sentence.

{¶ 11} It is from this judgment that Alsup now appeals.

{¶ 12} Alsup's sole assignment of error consists of two subsections. It is as follows:

{¶ 13} "DEFENDANT-APPELLANT'S MOTION TO SUPPRESS WAS IMPROPERLY OVERRULED BECAUSE THE EVIDENCE WAS GATHERED BY AN UNCONSTITUTIONAL WARRANTLESS SEARCH."

{¶ 14} "I. OFFICER LACKED PROBABLE CAUSE TO ARREST DEFENDANT-APPELLANT FOR PUBLIC INDECENCY AND THEREFORE THE COURT ERRED IN OVERRULING THE MOTION TO SUPPRESS."

{¶ 15} In the first subsection of his sole assignment, Alsup contends that the trial court erred when it overruled his motion to suppress because Officer Hassan lacked probable cause to arrest him for public indecency. Specifically, Alsup argues that no evidence was adduced at the suppression hearing which establishes that his private parts were likely to be seen by Officer Hassan or any of the other customers present in front of the convenience store on the night of the alleged offense.

{¶ 16} As this Court has previously noted:

"Appellate courts give great deference to the factual findings of the

trier of facts. (Internal citations omitted) . At a suppression hearing, the trial court serves as the trier of fact, and must judge the credibility of witnesses and the weight of the evidence. (Internal citations omitted). The trial court is in the best position to resolve questions of fact and evaluate witness credibility. (Internal citations omitted). In reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's factual findings, relies on the trial court's ability to assess the credibility of witnesses, and independently determines whether the trial court applied the proper legal standard to the facts as found. (Internal citations omitted). An appellate court is bound to accept the trial court's factual findings as long as they are supported by competent, credible evidence." *State v. Hurt*, Montgomery App. No. 21009, 2006-Ohio-990.

*State v. Purser*, 2d Dist. Greene No. 2006 CA 14, 2007-Ohio-192, ¶ 11.

{¶ 17} Initially, we note that the only witness who testified at the hearing held on Alsup's motion to suppress was Officer Hassan. The trial court found his testimony credible and adopted it as the court's factual findings.

{¶ 18} Alsup was initially arrested for public indecency, in violation of R.C. 2907.09(A)(1) which states in pertinent part:

(A) No person shall recklessly do any of the following, under circumstances in which the person's conduct is likely to be viewed by and affront others who are in the person's physical proximity and who are not members of the person's household:

(1) Expose his or her private parts; ***

{¶ 19}   Pursuant to R.C. 2901.22(C),

[a] person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature.  A person is reckless with respect to the circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

{¶ 20}   The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution protect individuals from unreasonable searches and seizures. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Pressly*, 2d Dist. Montgomery No. 24852, 2012-Ohio-4083, ¶ 18.   "Under applicable legal standards, the State has the burden of showing the validity of a warrantless search, because warrantless searches are 'per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well delineated exceptions.' " *State v. Hilton*, 2d Dist. Champaign No. 08-CA-18, 2009-Ohio-5744, ¶ 21-22, citing *Xenia v. Wallace*, 37 Ohio St.3d 216, 218, 524 N.E.2d 889 (1988).

{¶ 21}   The state bears the burden of proof on the issue of whether probable cause existed for a warrantless search and seizure. *Xenia v. Wallace*, 37 Ohio St.3d 216, 218, 524 N.E.2d 889 (1988).   "Probable cause to arrest depends 'upon whether, at the moment the arrest was made *** the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a

prudent man in believing that the [suspect] had committed or was committing an offense.' " *Adams v. Williams*, 407 U.S. 143, 148, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858 at ¶66, citing *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976).   See, also, *State v. Jordan*, 2d Dist. Montgomery No. 18600, 2001-Ohio-1630.   The existence of probable cause is determined by looking at the totality of the circumstances. See *Illinois v. Gates*, 462 U.S. 213, 230-32, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶ 22}   In *Columbus v. Breer*, 152 Ohio App.3d 701, 703, 2003-Ohio-2479, 789 N.E.2d 1144, ¶ 13 (10th Dist.), the appellate court held that as a matter of law, urinating in public can constitute public indecency.   In *Breer*, the court further held that the public indecency statute is unambiguous insofar as it prohibits the reckless exposure of private parts in which the conduct would likely be viewed and affront others. *Id.*   The appellate court found that Breer was observed holding his penis in his right hand and urinating outdoors within ten to twenty feet of police officers and citizens. *Id*.   Breer "took no reasonable precautions against discovery or to assure privacy.   Nor did appellee argue that his conduct was in response to an urgent physical need." *Id*.

{¶ 23}   Upon review, we conclude that, based on his observations, Officer Hassan had probable cause to arrest Alsup for public indecency.   After he followed Alsup out of the convenience store, Officer Hassan turned left and immediately observed appellant urinating on the side of the building.   Officer Hassan also testified that there were at least two customers in the immediate vicinity outside the front of the store who were waiting to

purchase goods from a walk-up window. Officer Hassan testified that from his perspective, he reasonably believed that the customers could see Alsup while he urinated on the side of the building. This perspective was validated by the customers' laughter in response to Alsup's conduct. Alsup appeared to be heavily intoxicated, and he took no reasonable precautions against discovery or to assure his privacy. Although Alsup's conduct may well have been in response to an urgent physical need, he took no precautions to urinate out of public view. It is, therefore, reasonable to conclude that his observations of Alsup would provide Officer Hassan the reasonable belief that R.C. 2907.09(A)(1) was being violated. Thus, Officer Hassan had probable cause to arrest Alsup for public indecency and initiate a search incident to the arrest.[1] See *State v. McCall*, 9th Dist. Lorain No. 09CA009729, 2010-Ohio-4283 (appellate court held that, pursuant to R.C. 2907.09(A)(1), urinating in public could constitute the offense of public indecency). Therefore, the trial court did not err when it overruled Alsup's motion to suppress.

{¶ 24} The first subsection of Alsup's assignment of error is overruled.

{¶ 25} The second subsection of Alsup's assignment of error is as follows:

{¶ 26} "II. [THE] TRIAL COURT ERRED IN RULING THAT, IF OFFICER HASSAN LACKED PROBABLE CAUSE FOR THE ARREST OF PUBLIC INDECENCY, OFFICER HASSAN HAD AUTHORITY TO ARREST DEFENDANT-APPELLANT FOR PUBLIC INTOXICATION."

---

[1]Although the drugs were ultimately recovered in plain view upon being discarded by Alsup after he was taken by Officer Hassan to the police cruiser, he had already been placed under arrest for public indecency when he dropped the contraband. The basis for the initial attempted pat-down was, nevertheless, the result of a lawful arrest, and the drugs are not subject to suppression.

{¶ 27} In his second assignment, Alsup argues that the trial court erred in finding that Officer Hassan had probable cause to believe that appellant, in his intoxicated state, posed a danger to himself and others, thereby justifying his arrest pursuant to R.C. 2935.26(A)(1). However, in light of our disposition with respect to his argument in the first subsection, the second subsection of Alsup's sole assignment is rendered moot.

{¶ 28} Subsection one of Alsup's assignment of error having been overruled and the second subsection having been rendered moot, the judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, P.J. and FAIN, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Tiffany C. Allen
Joanna Lenefonte
Hon. Mary K. Huffman